FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 20, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KELLY E. SMALL,<br><br>                    Petitioner,<br><br>    v.<br><br>JAMES KEY,<br><br>                    Respondent. | No. 2:23-CV-00005-MKD<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING PETITION FOR WRIT OF HABEAS CORPUS<br><br>**ECF Nos. 1, 12** |

Before the Court is a Report and Recommendation, ECF No. 12. Petitioner filed a Petition for Writ of Habeas Corpus seeking review of his state conviction, pursuant to 28 U.S.C. § 2254. ECF No. 1. The magistrate judge recommends that the Court deny the Petition. ECF No. 12 at 9. Petitioner filed Objections to the Report and Recommendation on January 22, 2025. ECF No. 13. Respondent did not file a response to Petitioner's objections.

The Court has considered the briefing and the record and is fully informed. For the reasons explained below, the Court adopts the Report and Recommendation, denies the Petition, and denies a certificate of appealability.

ORDER – 1

**BACKGROUND**

Petitioner seeks relief in relation to Okanogan County Superior Court case no. 12-1-00265-5.  *See* ECF No. 1 at 1 (citing case number "312267"); *State v. Small* ("*Small I*"), 404 P.3d 543 (Wash. Ct. App. 2017) (published in part), (bearing appellate docket number 31226-7-III, on direct appeal from Okanogan County Superior Court case no. 12-1-00265-5).  In this case, Petitioner was charged with aggravated first degree murder, first degree rape, and first degree burglary against victim S.B. in 1998.  *See Small I*, 404 P.3d at 544.  Investigators identified Petitioner in 2010 after obtaining a DNA sample from Petitioner, which eventually linked him to the 1998 crimes against S.B. and the 2006 sexual assault of victim B.M.  *Id.*

Petitioner's charges for the 1998 and 2006 cases were initially joined, but the trial court granted Petitioner's motion to sever.  *Id.*  Proceedings for the 1998 offenses went forward under case no. 12-1-00265-5, and proceedings for the 2006 offenses went forward under case no. 10-1-00029-0; Petitioner was tried separately in each case in mid-2012 and sentenced separately in each case in October 2012.  *See id.*; ECF No. 7-1 at 46-47, 2008; *State v. Small*, No. 10-1-00029-0, 2012 WL 13171660 (Wash. Sup. Ct. Oct. 5, 2012).  Petitioner does not request habeas relief in relation to the case concerning the 2006 offenses.

In the case concerning the 1998 offenses, Petitioner was convicted after a jury trial and was sentenced to life imprisonment without parole for the murder offense; 123 months for the rape offense; and 113 months for the burglary offense. ECF No. 7-1 at 2-14. Petitioner's sentences for the 1998 murder and rape offenses, and his 380-month sentence for the 2006 rape offense, were to run consecutive. *Small I*, 404 P.3d at 545; ECF No. 7-1 at 6.

On direct appeal, the Washington Court of Appeals affirmed Petitioner's sentences for the 1998 offenses but remanded for correction of a 24-month enhancement to the burglary sentence and for potential reconsideration of the imposition of appellate costs. *Small I*, 404 P.3d at 546. Petitioner filed, and the Court of Appeals denied, a motion for reconsideration. ECF No. 7-1 at 220. The Washington Supreme Court denied review in May 2018. *State v. Small* ("*Small II*"), 415 P.3d 1199 (Wash. 2018).

Petitioner filed a personal restraint petition challenging his convictions for the 1998 offenses, ECF No. 7-1 at 243-71, which the Court of Appeals dismissed in August 2019, *id.* at 377-390.

In 2020, Petitioner filed a petition for writ of habeas corpus in the Eastern District of Washington, but because he was still awaiting resentencing before the superior court, the district court dismissed the petition as premature. *See Small v. Key*, No. 20-CV-43, 2020 WL 6568857 (E.D. Wash. Nov. 9, 2020), ECF No. 18.

On April 1, 2021, the superior court modified the judgment and sentence to reduce Petitioner's burglary sentence to 89 months.  ECF No. 7-1 at 16-17.  Petitioner appealed from this modified judgment, and the Court of Appeals affirmed.  *State v. Small* ("*Small III*"), 22 Wash. App. 2d 1056 (Wash. Ct. App. 2022) (unpublished).

## LEGAL STANDARD

### A. 28 U.S.C. § 2254

Pursuant to 28 U.S.C. § 2254(a), a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

In relevant part, a federal court may not grant habeas relief to a state prisoner based on "any claim that was adjudicated on the merits in State court proceedings" unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or reaches a different conclusion than a Supreme Court decision involving "materially indistinguishable" facts.  *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (citation

omitted).  A state court decision is "an unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle" from Supreme Court precedent but applies that principle in an "objectively unreasonable" manner.  *Id.* at 75 (citation omitted).

Where the petitioner claims that there was insufficient evidence to support his conviction, such claims "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).  First, the state courts need only have concluded that, when "view[ing] the evidence in the light most favorable to the prosecution," "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Kyzar v. Ryan*, 780 F.3d 940, 949 (9th Cir. 2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original) (quotation marks omitted).  "Second, under [the Antiterrorism and Effective Death Penalty Act (AEDPA)]," a federal court "may grant habeas relief only if the [state] courts 'unreasonably applied the already deferential *Jackson* standard, . . . meaning that their application of law to facts was 'objectively unreasonable.'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) and citing 28 U.S.C. § 2254(d)(1)) (alterations omitted).

**B. Report & Recommendation**

A district court has jurisdiction to review a magistrate judge's report and recommendation on dispositive matters. Fed. R. Civ. P. 72(b); *see also* Rule 8(b) of the Rules Governing Section 2254 Cases. Under 28 U.S.C. § 636(b)(1), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge." Additionally, parties may file objections to the magistrate's findings and conclusions. 28 U.S.C. § 636(b)(1). The "statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (emphasis omitted).

## DISCUSSION

**A. Issues for De Novo Review**

Petitioner contends that the state courts acted contrary to, or involved an unreasonable application of, clearly established federal law in finding that there was sufficient evidence to support the jury verdict. ECF No. 1 at 5-8, 16-18 (responses to ¶ 12). The magistrate judge concluded that the state court decisions were not contrary to, nor an unreasonable application of, clearly established federal law. ECF No. 12. Petitioner objects to this conclusion, ECF No. 13, therefore the Court reviews this issue de novo. *See Reyna-Tapia*, 328 F.3d at 1121.

No party objects to the magistrate judge's finding that Petitioner has exhausted his state remedies, and Petitioner does not object to the magistrate judge's conclusion that he is not entitled to an evidentiary hearing. Therefore, the Court adopts these sections of the Report and Recommendation. *See Reyna-Tapia*, 328 F.3d at 1121.

## B. Claims of Insufficient Evidence

### 1. Summary of Arguments

Petitioner seeks federal review on two grounds in the initial Petition. First, he argues there was insufficient evidence to support his first degree rape conviction where acid phosphatase (AP) testing of the vaginal and anal swabs taken from S.B.'s body yielded mixed results that were "not indicative of rape"; where his DNA was not found on the swabs; where the medical examiner found no vaginal or rectal injuries during S.B.'s autopsy; and where there was no indication that the lubricant found at the crime scene was detected on S.B.'s body. ECF No. 1 at 5-7, 16-17. Second, he argues there was insufficient evidence to support his aggravated first degree murder conviction by alleging there was no fingerprinting, footprint or tire track casting, no presentation of a murder weapon or eyewitness, and insufficient investigation into the cigarette butt found at the scene and alternate explanations for the pubic hairs found at the scene that matched Petitioner's DNA. *Id.* at 7-8, 17-18. Although Petitioner divided these arguments by offense, the

Court construes him to be claiming that there was insufficient evidence for the jury to conclude (1) that S.B. was raped or (2) that he was the person responsible for that rape and, by extension, for the concurrent murder and burglary.[1]

In his Reply, Petitioner raises additional factual contentions that were not included in the original Petition:

- That the autopsy report did not conclude that S.B. had been raped, and the medical examiner testified that he had no conclusion as to whether or not S.B. had been sexually assaulted, ECF No. 9 at 2, 8-9, 13-14;

- That the pubic hairs found on a towel in S.B.'s home, which were determined to be Petitioner's, were not found on S.B.'s body or bed, *id.* at 7; and

---

[1] The magistrate judge reached effectively the same conclusion in construing the initial Petition to be arguing (1) insufficient evidence of rape "due to a lack of DNA evidence attributable to Petitioner found on the victim's body" and (2) "that the circumstantial evidence presented at trial cannot support a conviction regarding the first-degree murder, first-degree rape and first-degree burglary charges and the State should have pursued other lines of investigation."  ECF No 12 at 6-7 (citing ECF No. 1 at 17-18).

ORDER – 8

- That Petitioner testified he had returned the key to S.B.'s apartment to S.B.'s son, presumably before S.B.'s murder, but S.B.'s son denied this, *id.* at 7.

In his Objections to the Report and Recommendation, Petitioner raises further factual contentions that were not included in the Petition or Reply:

- That no key to S.B.'s home was found on Petitioner or at Petitioner's home, and no key was entered into evidence at trial, ECF No. 13 at 2;

- That no knife was found at the crime scene or entered into evidence at trial, *id.* at 2, 8;

- That, if a knife had been used in the crime, it would not have made sense to kill S.B. by strangulation rather than by using the knife, *id.* at 2; and

- That the position in which S.B.'s body was found is insufficient proof of sexual intercourse or rape, *id.* at 8.

The Court does not dwell on the timeliness or untimeliness of Petitioner's factual contentions because the specifics of these contentions are ultimately immaterial to assessing Petitioner's insufficiency of the evidence claims. *See Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002) (explaining that "a district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation") (citation and quotation marks omitted).

ORDER – 9

*2. Sufficiency of the Evidence*

At trial, Petitioner moved to dismiss the rape charge after the prosecution rested.  ECF No. 7-1 at 1727.  The trial court denied the motion.  *Id.* at 1730-31.

> THE COURT: . . . In this case, I mean, a rational trier of fact, viewing the evidence and the inferences in the light most favorable to the state, could say that – victim was home alone, was brutally attacked, had her clothes ripped or cut off, found naked in bed with positive AP vaginal and anal swabs, and two pubic hairs from the defendant were found, one on a towel and one on a blanket.  She was choked from behind in a manner arguably consistent with a sexual position, a sexual act.  There was a struggle.  And the other – the other things.

*Id.* at 1731.  Petitioner renewed this motion at the close of all evidence, and the trial court denied the motion for the same reasons.  *Id.* at 2035, 2038.

On direct appeal, Petitioner argued there was insufficient evidence that S.B. had been raped given the lack of spermatozoa found on the vaginal swab and the consequent reliance on "circumstantial evidence" that a sex offense had occurred, such as the underwear found in S.B.'s bedroom that had been "cut with a sharp object"; the fact that S.B. was found nude; the placement of the injuries and other marks on S.B.'s body.  ECF No. 7-1 at 76-78.

The Court of Appeals cited the proper legal standard from *Jackson*, under which challenges to the sufficiency of the evidence supporting a conviction are reviewed "to see if there was evidence from which the trier of fact could find each element of the offense proved beyond a reasonable doubt[,]" after "consider[ing]

1   the evidence in a light most favorable to the prosecution."  *Small I*, 404 P.3d at

2   546.  This decision did not contradict the governing law set forth in Supreme Court

3   precedent and therefore was not contrary to clearly established federal law.  *See*

4   *Lockyer*, 538 U.S. at 73.

5          Applying the *Jackson* standard to Petitioner's case, the Court of Appeals

6   concluded that a rational trier of fact could have found that the prosecution had

7   proved sexual intercourse, an essential element of the rape offense, beyond a

8   reasonable doubt.  *See Kyzar*, 780 F.3d at 949.

> 23. With respect to the rape charge, one element that the State was required to prove was that sexual intercourse occurred.  RCW 9A.44.040(1).  Appellant contends that the evidence does not establish that intercourse occurred.  He points to the fact that no sperm were recovered from the victim's body and that the State presented no evidence that his vasectomy had successfully eliminated all sperm from his ejaculate.
>
> 24. However, the State was not under any obligation to establish either of those facts.  The prosecutor's obligation under the statute was to prove that sexual intercourse occurred.  Evidence was introduced indicating that acid phosphate, an enzyme produced in the prostate and found in seminal fluid, was recovered from the victim's anus and vagina.  Her body was found on her bed, face down and naked, with the hips slightly elevated.  Two pubic hairs from which the defendant's DNA was recovered were found on a blanket and a nearby towel, along with lubricant.
>
> 25. This evidence overwhelmingly supported the jury's determination that sexual intercourse occurred.  The evidence was sufficient.

ORDER – 11

*Small I*, 404 P.3d at 546. Accordingly, the Court may grant Petitioner habeas relief only if the state court applied the *Jackson* standard in an objectively unreasonable manner. *See Kyzar*, 780 F.3d at 949.

The above-quoted discussion reflects a reasonable application of the *Jackson* standard to the facts in Petitioner's case. As the court explained, Petitioner was essentially arguing that the prosecution was obligated to produce ***specific types*** of evidence, which was an incorrect statement of the prosecution's burden of proof. Then, the court listed the evidence at trial that supported the sexual intercourse element of the rape offense and found that evidence sufficient.

The parties have not indicated where, if anywhere, the state courts addressed the sufficiency of the evidence that Petitioner was the perpetrator (i.e., the element of identity), but the Court nevertheless concludes there was ample evidence from which a reasonable trier of fact could have found that Petitioner was responsible. [2] The Court provides a nonexhaustive summary of that evidence below:

---

[2] Respondent conceded the issue of administrative exhaustion as to all claims in the initial Petition, ECF No. 6 at 5, and did not avail himself of the opportunity to dispute exhaustion of later-raised claims in a response to Petitioner's Objections. Although it does not appear that Petitioner exhausted his state remedies on his claim of insufficient evidence that he was the perpetrator of these offenses, Section

- Petitioner knew S.B. by 1997, if not earlier, when he worked on the remodel of S.B.'s apartment. *Id.* at 915, 952-53, 988-89, 1006, 1020, 1188-89.

- In the course of his remodeling work, Petitioner had been given a key to the apartment. *Id.* at 1001, 1021, 1031. S.B.'s son testified that Petitioner did not return this key afterward and that he had advised S.B. to change the locks, but she could not afford to do so.[3] *Id.* at 989, 1001-02. S.B. was known to be "meticulous" and to keep her home locked at all times. *Id.* at 968, 995. There were no signs of a struggle in S.B.'s apartment except in S.B.'s bedroom, where there were blood spatters; clothing strewn about, some of which had been cut or torn based on forensic examination; and signs that the bed and carpet had been displaced. *Id.* at 541-42, 567, 667-68, 675, 768-69, 1324-31.

---

2254(b)(2) permits a court to deny a habeas corpus petition on the merits notwithstanding a failure to exhaust.

[3] Although Petitioner stated he testified that he had given the key back to S.B.'s son, ECF No. 9 at 7, under *Jackson*, the reviewing court must view the evidence in the light most favorable to the prosecution.

ORDER – 13

- Petitioner had been interviewed by phone during the initial investigation into S.B.'s murder. *Id.* at 914-15. Within a few months after S.B.'s murder, Petitioner and his family moved away from the area to Issaquah, Washington. *Id.* at 1189.

- In 2010, police contacted Petitioner while following up with male witnesses noted in the case file, and Petitioner agreed to an interview. *Id.* at 1026-28. Petitioner showed signs of nervousness during the interview. *Id.* at 1031-32. Petitioner consented to providing a DNA sample, and police took four buccal swabs. *Id.* at 1032-33.

- The next business day after this interview, Petitioner's wife reported Petitioner was missing, along with his clothing, his hearing aid case, a shaving razor, and an ATV. *Id.* at 1045-46, 1050, 1073-74, 1156, 1171, 1173, 1190, 1391-92. Police discovered that Petitioner had sold the ATV for roughly 40 to 60 percent of its estimated value on the day he was reported missing. *Id.* at 1054, 1057-59, 1063, 1067, 1070-71, 1252. Days later, Petitioner's wife told the purchaser of the ATV that Petitioner was a suspect in S.B.'s murder and was on the run. *Id.* at 1607-08.

- About 11 days after Petitioner was reported missing, police discovered he had returned home. *Id.* at 1080. Petitioner said he had been traveling due to stress about his family's finances. *Id.* at 1081, 1083, 1085.

ORDER – 14

Petitioner said he had driven his Jeep to Seattle; flown to Los Angeles; taken a bus to Texas; then to Arizona; then to Las Vegas; and then back to Washington. *Id.* at 1083-84. He stated he had sold the ATV for travel money. *Id.* at 1083. Petitioner's wife testified that she sold another ATV to get the money to recover Petitioner's Jeep from the Seattle airport parking lot, in which he had left various property including his cell phone, his car keys, and tool bags. *Id.* at 1204-06, 1678, 1683. Petitioner had canceled a job he had been scheduled to do on the day he went missing, and his employment benefits were terminated due to his absence. *Id.* at 1250, 1677-78, 1682.

- When police commented that Petitioner had no baggage from his trip, he claimed his bags had been stolen in Las Vegas. *Id.* at 1084. A few days later he admitted that was a lie and that he had actually left the bag in his motel room in Las Vegas. *Id.* at 1086, 1096-97. Police recovered the bag and found dirty clothes, a notebook, and bus receipts indicating Petitioner had put the bus tickets under a false name. *Id.* at 1087-88, 1687-88.

- The notebook in the bag contained indented writings, i.e., impressions left on a lower page by writing on an upper page. *Id.* at 1088, 1433, 1439-40. The indented writings resembled Petitioner's handwriting on

ORDER – 15

forensic comparison analysis and were recognized by Petitioner's wife as having been written by Petitioner. *Id.* at 1206-07, 1458, 1461, 1553-54. The indented writings, which had apparently been written while Petitioner was still missing, expressed regret for something that had happened "twelve years ago" on "one of [his] blackout nights" and farewell messages to Petitioner's wife, children, and grandchild, and was signed "Kelly" and "Dad." *Id.* at 1536-47.

- In 1998, various items of evidence were tested for acid phosphatase (AP), as a presumptive test for the presence of seminal fluid. *Id.* at 1260-62, 1268. The test is designed to look for higher levels of AP, as found in seminal fluid, versus lower levels of AP that may be found in the vaginal or anal areas. *Id.* at 1262-65. Tests conducted in July 1998 of the vaginal and anal swabs taken from S.B.'s body were positive for AP, indicating it was likely that seminal fluid was present. *Id.* at 1265-66. The swabs were negative for spermatozoa. *Id.* at 1271-73. Petitioner had undergone a vasectomy in 1991. *Id.* at 1242-43, 1248. AP is still present in the seminal fluid of aspermatic men. *Id.* at 1263.

- Pubic hairs were recovered from a towel and a blanket on the bed where S.B.'s body was found. *Id.* at 534, 1333-38. Other hairs were located in the items collected from S.B.'s bedroom. *Id.* at 534, 1342. The hairs that

ORDER – 16

were not consistent with S.B.'s hair and had attached tissue were sent for DNA testing, although only two pubic hairs contained enough material to produce a DNA profile. *Id.* at 1351, 1354-62, 1638. The DNA analysis indicated both hairs had come a single male individual and were later matched to the DNA samples from Petitioner. *Id.* at 1519, 1526, 1528, 1531, 1647.

Petitioner raises various challenges to the weight of the above evidence, none of which are well-founded. For example, Petitioner repeatedly points to the differing results of AP testing conducted on the vaginal and anal swabs in 1998, versus retesting in 1999 and 2007. *See, e.g.,* ECF No. 1 at 16-18; ECF No. 9 at 37-38. In denying Petitioner's personal restraint petition, the Court of Appeals summarized why the later negative results do not invalidate the earlier positive results:

> The [2007] report involved acid phosphatase testing on several items from the crime scene, each of which were negative. . . .
> Notably, some of the acid phosphatase testing done in 1999 came back negative, when testing from the same swabs had been positive in 1998. At trial, forensic scientist Charles Solomon attributed this discrepancy to the fact that each time a sample is tested it is done by cutting off a section of the swab and testing that removed portion, which then gets used up in testing. Thus, what was tested in 1999 and 2007 was not what was tested in 1998 . . . .

1   ECF No. 7-1 at 382-84 (referencing ECF No. 7-1 at 1272-73).  As another

2   example, Petitioner emphasizes that the medical examiner found no vaginal or

3   rectal injuries.  *See, e.g.,* ECF No. 1 at 17; ECF No. 9 at 8-9, ECF No. 13 at 7.  The

4   medical examiner testified as follows about the significance of the lack of such

5   injuries:

6           Q      Dr. Rappe, would the absence of injury to the –
                genital areas or the – would that indicate – or would that
7               rule out sexual assault – if there were no injury?

8           A      No, it would not rule out sexual assault.  There's –
                I've – I've had cases of sexual assault where – there are no
9               injuries.  And indeed in the literature, perhaps as little as
                40 or so percent of rape victims have actual damage to
10              their vagina or rectum.

11  ECF No. 7-1 at 818.  Regardless, the jury convicted Petitioner after considering all

12  the evidence and testimony in totality, not based upon the weight of any single

13  piece of evidence.

14          Petitioner also argues that the lack of specific types of evidence, such as

15  fingerprints or DNA evidence from the swabs; the failure to disprove every

16  possible alternative theory; and the reliance on circumstantial evidence shows that

17  the evidence was insufficient for his convictions.  *See, e.g.,* ECF No. 1 at 17-18;

18  ECF No. 9 at 3, 7; ECF No. 13 at 8.  The prosecution was not required to meet its

19  burden of proof using particular types of evidence.  Petitioner was permitted to

20  introduce testimony from an expert critiquing the thoroughness of the

investigation.  *See* ECF No. 7-1 at 1868-1920 (testimony of Robert Baker).

Moreover, a conviction may be based entirely on circumstantial evidence, so long

as it "is of sufficient quality to convince a jury beyond a reasonable doubt."

*United States v. Boise*, 916 F.2d 497, 499 (9th Cir. 1990) (citing *Holland v. United States*, 348 U.S. 121, 140 (1954)).

Petitioner is not entitled to relief on his claims that there was insufficient

evidence supporting his convictions.

**C. Undeveloped Claim of Prosecutorial Misconduct**

For the first time in the Reply, and continuing in his Objections, Petitioner

accuses the prosecution of presenting "false or misleading evidence."  ECF No. 9

at 1, 17-20.  He appears to be primarily arguing that the prosecution misled the jury

by overstating the conclusions that could be drawn from the AP swab testing.[4]  He

_____

[4] *See, e.g.,* ECF No. 9 at 4 ("The State used the crime lab reports from the rape kit

and mislead [sic] the jury with it, because (AP) does not 'Identify a Person' and

Mr. Small's DNA was not on the swabs from the rape kit."), 12-13 ("The State is

misleading [crossed-out word] with fake evidence and he knows it is fake because

the State has all the crime lab reports on the rape kit (swabs) and no report from

Charles E. Solomon [that the AP testing proved the presence of seminal fluid].")

15 ("The State mislead [sic] the jury with the evidence, he kept telling the jury

ORDER – 19

occasionally suggests that the prosecution's evidence and argument regarding the rape offense improperly enflamed the jury's emotions to secure a conviction on the murder charge or shifted the burden of proof to Petitioner, to prove himself innocent. *See* ECF No. 13 at 7, 14-15, 18-20.

Petitioner provides few citations to the record in relation to these allegations of misconduct. *See* ECF No. 9 at 12 (citing ECF No. 7-1 at 2091, 2117); ECF No. 13 at 14 (citing ECF No. 7-1 at 2113, 2117). For the sake of thoroughness, the Court reviewed the prosecution's opening statement and closing argument in full and finds no support for Petitioner's allegations of misconduct. *See* ECF No. 7-1 at 467-81 (opening statement), 2086-2122 (closing argument).

To the extent that Petitioner has raised a separate claim based on prosecutorial misconduct, he is not entitled to habeas relief on that ground.

**D. Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2254 Cases requires that a district court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *See also* Fed. R. App. P. 22(b). "A certificate of

_____

[throughout] the trial and closing argument that Mr. Small raped [S.B.] "<u>How do we know because we have (AP) on the swabs</u>" "He raped her."") (underlining in brief).

appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In weighing a certificate of appealability, "the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 580 U.S. 100, 115 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).

Petitioner has not made a substantial showing of the denial of a constitutional right. The state court decisions correctly identified the *Jackson* standard and reasonably applied it to the facts of Petitioner's case. The Court denies a certificate of appealability.

## CONCLUSION

Upon de novo review, the Court finds that all claims in the Petition for Writ of Habeas Corpus are precluded by 28 U.S.C. § 2254(d)(1). The Court adopts the magistrate judge's conclusion that Petitioner is not entitled to an evidentiary hearing. Finally, the Court denies a certificate of appealability. Accordingly, **IT IS HEREBY ORDERED:**

1. The Court **ADOPTS** the Report and Recommendation, **ECF No. 12**.

2. The Petition for Writ of Habeas Corpus, **ECF No. 1**, is **DENIED**.

3. A certificate of appealability is **DENIED**.

1    **IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order,

2    provide a copy to the parties, enter final judgment in favor of Respondent, and

3    **CLOSE the file**.

4    **DATED** February 20, 2025.

5                            *s/Mary K. Dimke*
                            MARY K. DIMKE
6                    UNITED STATES DISTRICT JUDGE

ORDER – 22